Good morning. The first case on the docket today is Schoeps v. Sompo Holdings, case number 251405. We'll hear from Mr. Hamilton. Thank you, Your Honor. My name is Tom Hamilton, Your Honor. With me are my colleagues John Byrne and Marty Schwartz. We represent the appellants. Good morning. This appeal involves a dismissal with prejudice of a case seeking to recover the iconic Sunflowers painting. It's a Nazi-confiscated artwork which the famous Berlin banker and private collector Paul Mendelssohn-Vartoli lost in Germany in 1934. It's a direct consequence of escalating Nazi persecution in violation of international law of human rights. The Nazi persecution destroyed the Mendelssohn family, deprived it of its bank, and this is one of many artworks Mendelssohn-Paul lost as a result of Nazi policies. Since 1998, both the Congress and the President have reaffirmed a solemn foreign policy commitment to restituting these works of art through a host of statutes and executive agreements. Most recently, the prospective HERE Act amendments of 2025 direct the court to resolve these cases exclusively on their merits and to negate all possible affirmative defenses, signaling the foreign policy magnitude and importance of this particular objective. Most importantly also, Congress and the President, which control foreign policy under the Constitution, have assigned the federal judiciary a very integral role in accomplishing this foreign policy by directing the courts to resolve these cases on their merits. Your Honors, this case at its core involves a theme as old as human temptation itself. A classic devil's bargain when a party in exchange for receiving some illicit advantage or power that promises great wealth and fame forfeits its authentic identity and mortgages its future. This case also invokes cardinal equitable principles that preclude wrongdoers from taking advantage of their own wrongs and require parties who receive the benefits of the transaction to discharge the reciprocal obligations. In this case, the temptation appeared in the form of this magnificent sunflowers painting, an iconic Van Gogh painting internationally famous. Do you mind before we get into the merits, maybe back up for a moment and just talk about and direct us to where we have our subject matter jurisdiction to even be able to entertain the underlying merits of the case? Because there are federal questions of great importance in terms of the foreign policy of the United States. And so is that where we're getting under the federal common law? No, it's federal jurisdiction based upon important federal rights being involved in the determination of this case. This is foreign policy exclusively federal under the U.S. Constitution, and states cannot interfere or in any way infringe. And a classic case of federal preemption is when a state law obstructs or in any way diminishes a foreign policy objective. What are we to make of the fact that the terrorism declaration by its terms is non-binding, whereas the cases that you cite in support of that proposition dealt with treaties that were binding upon the signatures? The non-binding issue, Your Honor, is something of a red herring. The Garamendi decision of the Supreme Court explains that non-binding – the President enjoys extensive foreign policy authority under the Constitution, and Congress has basically gone along with and acknowledged that. The Garamendi decision says explicitly that a non-binding agreement may represent the particular diplomatic mechanism that the President has chosen to achieve a foreign policy objective. And that just because there's not a reciprocal enforcement capability of the various nations to the treaty – and the United States can't enforce it against France, Spain can't enforce it against Great Britain – that doesn't mean that as far as the United States' foreign policy is concerned, it's an incumbent foreign policy that the courts have to acknowledge and implement. But don't you think that if Congress really wanted to provide a federal cause of action to victims of the Holocaust who are trying to retrieve their art and possessions, that the HERE Act would have been the perfect opportunity for Congress to do so, and yet it chose not to? But that's exactly the scenario that this Credit Bureau case addressed several years ago, that in order for a statute to deprive the court of its inherent equitable authority, it would have to prescribe specific equitable remedies. But the Credit Bureau case – I mean, I understand why you cite it – but the Credit Bureau case dealt with, as you say, remedies, the availability of remedies, not a cause of action, which is what we're talking about. No, but the court retains inherently – and this is a very important point – the federal courts, by their constitutional identity, retain the full, plenary, unrestricted equitable authority that the courts in Great Britain were exercising in 1789 when the Constitution was adopted. And there's just a raft of Supreme Court decisions that underscore that point, most recently Kansas v. Nebraska and cases going back to the New Deal, and we cite them extensively in a footnote. And the fundamental idea is that when an important federal policy is involved, the equitable authority of the court is maximal to achieve those objectives, and that courts necessarily can exercise their full equitable authority unless Congress, when it enacts a particular statute, prescribes equitable remedies in the statute itself. There will be an understanding tacitly that Congress intended that those equitable remedies be the exclusive equitable remedies that courts can invoke or that a party can invoke. But isn't there a difference between whether a court can hear a particular cause of action or whether the parties can bring a cause of action before a court versus once a cause of action is here, what sort of relief a court can provide to the litigants? Well, yes and no, meaning this. The court has inherent equitable authority. There's a necessarily implied capability of a party to seek that exercise of that authority through the traditional, well-established remedies of restitution and unjust enrichment. Restitution and unjust enrichment are indigenous, inherent in the equitable authority of the court. And what is clear here, you have both branches of the government responsible for foreign policy going out of their way. And the HERE Act in them signals some frustration with the judiciary for failing to adhere to the 2016 Act in terms of deciding these cases on their substantive merit. The Congress has said it's unequivocal. We want the courts to resolve these cases on their substantive merits. And it's almost a sure bet that within a few months that HERE Act 2025 amendments will be in law. They enjoy bipartisan support in both houses of Congress and the Senate. And they express, if nothing less, strong legislative intent for courts to return Nazi-confiscated artworks. The court has inherent authority to do that unless Congress, through a statute, has in some way limited or restricted that authority. The HERE Act goes out of its way to say we're not implying any cause of action. We're not limiting the inherent remedies of the court. So by necessary default, the court sits with full, plenary, unrestricted, equitable authority to achieve an objective that Congress could not be more clear on. Mr. Hamilton, given the time constraints, would you mind turning to personal jurisdiction? Yes. Personal jurisdiction. This is a classic. What is your best argument for how the Sample Holding purposely availed itself of the laws of Illinois? In a paradigmatic way. They brought the painting to Chicago in 2001. Purposeful availment. Taking advantage of the benefits, privileges of a forum state to achieve some benefit to the party. This Van Gogh exhibition that was orchestrated with the Van Gogh Museum in Amsterdam. Sample brought the painting to Chicago knowing, knowing, Your Honor, that it was a Nazi-confiscated painting. The sample person in charge of the exhibition told the AIC, Art Institute, that a Nazi-confiscation problem may arise in Illinois. So they knew the United States had a strong policy to restitute these materials. Nazi-confiscated artwork. Notwithstanding that, they brought it to Chicago only after eluding or taking out of the provenance Mendelssohn Martoli, the big red flag in the provenance, and collaborating with the AIC to defraud the State Department into issuing a certificate of non-judicial seizure, assuring that the painting would not be seized. So what is your theory of what kind of benefit Sample Holding received? Enormous media benefits, public relations benefits, all going to the core purpose of why they spent $40 million of shareholder funds in 1987 to buy this painting. It's not, you know, a lark and a detour. They saw an opportunity to make this painting coextensive with their brand identity. And they felt that they could spend $40 million doing that. But that's not the end of it. In 1991, they went to the Van Gogh Museum in Amsterdam and contributed $30 million more shareholder dollars to build a Van Gogh wing. What kind of corporation can spend shareholder funds without calculating in a very meaningful way that those investments would return, seek a return on investment? In fact, after Sample bought, Yasuda, the corporate predecessor, bought the painting, the very week after, it declared that it had received four times the hammer price of $40 million or $160 million in advertising equivalency. That they would have had to, in order to enhance their brand, to increase their capability of selling insurance, to create contacts with Illinois insurance consumers, they would have had to spend four times that amount in advertising. Illinois, the United States, has an overwhelming interest in this case. In fact, I would propose to your honor that if you wanted to illustrate paradigmatically to a first year civil procedure law student concepts of personal availment, reasonable foreseeability, realizing tangible benefits, and an imperative governmental interest in asserting jurisdiction, this would be a hard hypothetical to top. It's all there on anabolic steroids, if you, pardon the expression. There's an overwhelming jurisdictional nexus here, and the painting can't be anything other. I understand your theory that Sample's use of the painting is generally to try to increase its brand presence in the world in various markets. But what in particular can you point to to tie its loan of the painting to the Art Institute, to Illinois itself? Because you talk about right after the purchase, Sample said it received all of this brand identity. If you wouldn't let me. I'm sorry. And so here we're particularly looking at the contacts with Illinois and the resulting kind of quid pro quo. And so I was wondering if there was anything in the record that could speak to exactly, precisely that. Well, their own admission, essentially, that they received, that they received, they brought the painting to Illinois, this magnificent Van Gogh exhibition with intense international media. They were willing to commit torts and crimes to bring this painting into Illinois. Why? Because what they're trying to do, and we have an expert affidavit from Katie Quinn Spandenberg, a PhD in marketing. If you want something in the record, it's the Spandenberg Declaration. We've reviewed it. Okay. Well, she basically says, in a motion to dismiss, we're entitled to the benefit of those allegations. She couldn't be more clear about the purpose of this painting is to sell insurance in Illinois. I see you're going into your rebuttal time. Would you like to reserve? I would, Your Honor. Yes, I would. Do you have any other questions? No, thank you. Mr. Graham. May it please the Court. My name is Dan Graham, and along with my colleagues, we represent the four defendants in this case, Sampo Holdings, Sampo International Holdings, Sampo Japan Insurance Company, and the Sampo Fine Art Museum. Your Honor, I want to make sure that I hit key issues that were raised in the first part of the argument today, and I'm willing to obviously deal with minimum context issues before addressing the subject matter jurisdiction. But the one sole issue that brings this case to Illinois, at least what I've heard this morning, is the fact that Yasuda, which was the predecessor to Sampo Japan, was invited to provide a painting for a cultural exhibition by the Art Institute of Chicago, and that was in 2001. And just by way of background, Sampo Holdings wasn't formed until 2010. Yasuda was still Yasuda until 2002, but it's a cultural exhibition. And so what I've heard is that we should have, or Yasuda should have known, that this particular painting could be part of a Nazi confiscation problem. Well, I'll make sure that I understand what the record is. This is not a Nazi confiscated art case. This is an argument being made under the HERE Act that this artwork was sold under duress. This is not Nazi confiscated art. Importantly, this cultural exhibition, which resulted in quite an extensive publicity here in Illinois, there were visitors from all over the world who came to see the Gauguin and Van Gogh exhibition. Nonetheless, there was no commercial exploitation of that painting. In fact, in order to get the 2459, USC 2459 State Department declaration, you had to state that it wasn't for any commercial purpose. It was for not-for-profit. Certainly, we have affidavits or declarations that were provided to this court. Mr. Yamamoto's deposition, excuse me, declaration, specifically says Sampo didn't receive any financial remuneration from that exhibition. I think what also needs to be said about this particular foreseeability, there was no claim anywhere in the world that Sampo, Japan's predecessor, Yasuda, had not properly purchased the painting at the Christie's auction in 1987. There wasn't. It wasn't on any stolen art list or anything of that nature either. It's not reasonable to assume that Yasuda, in making this exhibition with sunflowers, could be sued 20 years later by foreign residents seeking to recover the painting. The two cases that Judge Daniel referred to in his opinion dealt specifically with this kind of minimal temporal visit, so to speak, of the painting within a jurisdiction. He cited to Barzali and he cited to Graff. He said, first he examined where did the tort occur? That tort occurred outside of the jurisdiction in which those two courts were addressing temporary exhibitions. He also addressed whether anyone from outside the jurisdiction would have known in some way, shape, or form that they could be accused of conversion, which took place in some other state or some other country, in the exhibition state. Mr. Graham, we do have limited time. I would appreciate it if at some point you could revisit the issue raised by my colleague Judge Pryor at the beginning of the conversation this morning. Is there any federal subject matter jurisdiction here? No, there isn't, Your Honor. Could you explain that with respect to the first several counts of the complaint? Absolutely. The four counts that were specifically related to federal subject matter jurisdiction are the two equitable counts and then the two counts for restitution and unjust enrichment under federal common law. The U.S. Supreme Court in Texas Industries really laid out when those unique circumstances exist. I'm not so much worried about those counts as I am about the others. What is the basis of federal jurisdiction on the other counts? Are you referring to the state law counts? Yeah. Oh, the jurisdiction of the federal court was under federal question jurisdiction. That's what they say. What is the basis of the federal question jurisdiction? The basis for federal question jurisdiction was cited by Judge Daniel in his footnote. Relative to the HERE Act, it's applicability to state law claims that may have statute of limitations that are limited. And so he felt that this court, federal court, had jurisdiction to deal with that issue as a federal question and then use that jurisdiction to address. But if you don't have original jurisdiction, why would you be able to implement supplemental jurisdiction? You wouldn't. You wouldn't. Didn't the HERE Act simply deal with the question of statute of limitations? Does it vest any jurisdiction in a federal court? It does not. Is it ever a cause of action? It does not, but the court cases that have dealt with the HERE Act have addressed it in the context of a federal question. But the HERE Act doesn't specifically state that all claims related to any state cause of action that has a statute of limitations must be brought in federal court. It doesn't. I mean, the HERE Act in Section 5F... It says that, I mean, the Act does say that nothing in this Act shall be construed to create a civil claim or cause of action under federal or state law. It's not under state law. You're under anything. We 100% agree. So what we believe that HERE Act is referring to there is the fact that a state law conversion claim could be brought. It could be brought somewhere as long as there's jurisdiction. And so what the HERE Act didn't do and what the appellants are asking this court to do is to disregard Section 5F. And our position, of course, is that that's not proper. That Section 5F describes as rule of construction is what it's labeled, describes how Congress viewed the extent of the HERE Act and the limitations of the HERE Act. It's specifically focused on eliminating statute of limitations for a specific period of time for causes of action, either federal or state causes of action. That's it. It didn't open up the Pandora. It didn't open up the box for creation of common law claims and causes of action. In fact, Congress explicitly said it cannot. I just don't see how you were in federal court on the first counts. You can't point me to any statute that creates a federal question cause of action with respect to those counts. The only federal causes of action mentioned in a complaint are with respect to the equitable remedies, et cetera, later ones. And if we were to agree with the district court and say those are spurious, they can't support federal jurisdiction, what else do they have? Nothing. So can we reach the question of personal jurisdiction if we don't have subject matter jurisdiction? Likely no. If this court determines it had no jurisdiction whatsoever to hear the case, then it wouldn't be addressing the minimum context issues. However, also the flip side occurs, if in fact this court determines that there aren't minimum contacts, then it need not address the more difficult issues related to subject matter jurisdiction. Is there authority for that? I'm sorry? I'm sorry? Is there authority for that? Addressing questions of personal jurisdiction before you address subject matter jurisdiction? There is. I believe that we cited Ruergas in our brief on that issue. Don't worry. Don't waste your time looking for it. We'll find it.  So, Your Honor, and mindful that my time is running out. Is there a particular reason why you think in this case we should address subject matter jurisdiction before personal jurisdiction or vice versa? I've read several Seventh Circuit cases that have gone either way. And is there a reason why you shouldn't? I think that there's some guidance from Zuckerman in 2019 in the Second Circuit. It dealt with issues that it could deal with without having to go too far in addressing whether the HERE Act applies to a claim of duress, whether the HERE Act is solely limited to state causes of action and limitations. And, as a matter of fact, counsel here, representing different individuals in the Zuckerman case, filed an amici brief asking the court to develop a cause of action, a federal cause of action for restitution. Every right to ask for that, but Zuckerman decided not to go there. It didn't need to, to make its decision. I just question, when we look at the Supreme Court case from 1936, McNutt, it says before you decide, federal courts, you are a court of limited jurisdiction. So before you make any other decision, ensure that the case is properly before you. And so that's my hesitation of opening the door to personal jurisdiction before resolving subject matter jurisdiction. And so I'll be interested in the case that you cited in your brief as to taking personal jurisdiction first. Again, because I've seen this court's opinions going both ways, I feel that the better approach is what you recommend, obviously, Judge. Turning to personal jurisdiction, the appellant really focuses on the Art Institute exhibition and says that sending the painting here is sufficient for purposeful availment, at least. We'll put the related to requirement to the side, for purposeful availment. And they say, well, you know, they came here, they had the protections of Illinois law, and they benefit from it. How would you respond to that argument? It's totally different than their claim. That is, the painting was brought by Yasuda for the cultural exhibition, and it was for that purpose. It is a contact with the state, for sure, for that entity. But it has nothing to do, and I know I'm sliding into relatedness and a Samsung argument in a bit, but it has nothing to do with the issues of conversion or trover and where the painting was acquired in 1987. Purposeful availment also focuses on what type of conduct or connection to the state. And a three-and-a-half-month exhibition is a very minimal availment of the state for that period. If we looked at Bristol-Myers Squibb, and we look at the cases where purposeful availment was missing, the issues surround, well, what type of connection does the company have with that state? And the only connection that Yasuda had with the state at that time was literally the exhibition. So I don't believe that the appellants here have met purposeful availment. They certainly haven't met the relatedness test, and without either one of those tests being met, there's no personal jurisdiction over any of the sample entities that are currently defendants in this case. Thank you very much, Your Honors. Thank you. Mr. Hamilton, we'll give you another minute on top of the two that you have, so we'll give you your full three minutes in rebuttal. I would point out, Your Honor, that the court acknowledged that it had subject matter jurisdiction, federal question jurisdiction, based on Gunn v. Mitten, and that is when federal issues may create an important dispositive outcome-determinative issue in the case that federal jurisdiction attaches. Nothing could be more important than the foreign policy of the United States could not be more clearly stated here in terms of federal policy. Foreign policy is exclusively federal, and the court has subject matter jurisdiction over this. The court determined this court would have to reverse the lower court on whether it has subject matter jurisdiction. Another basis for personal jurisdiction is the judge's own concession at transcript page 6 of the hearing, where he acknowledges that the Spanningberg Declaration establishes the necessary personal context for jurisdiction in terms of creating the type of emotional identity with insurance consumers, but the problem is it's available other than in Illinois. That's a totally spurious argument, and it's clear that they are using this painting to commercially exploit the insurance market in Illinois. The idea that this is some cultural exhibition that has nothing to do with the sale of insurance, and I'd ask the court to consider what would justify a corporation spending $40 million of hard-earned shareholder resources on the painting and another $30 million giving a new wing to the Van Gogh Museum if they didn't believe that that painting would enhance their ability to sell insurance and enhance their commercial profile in the United States and in Europe. So this idea about the HERE Act also not creating any remedies? It does not, but it does not deprive the court of the inherent equitable authority it has to implement equitable remedies. In order for the court to be deprived of equitable remedies, a statute has to do so expressly or by necessary implication. The HERE Act does neither. The HERE Act is totally silent. That leaves the court with its full equitable authority intact. The federal policies here could not be more imperative. The Supreme Court has punctuated for the last 80 years that federal courts enjoy maximal equitable authority to protect federal interests when federal interests are engaged, absent some extraordinary deprivation of that authority. That authority exists in this court. This is a profoundly significant foreign policy diplomatic case. Important federal questions are at stake that justify subject matter jurisdiction. The court has even acknowledged personal jurisdiction for the limited idea that the paintings not exclusively be available in Illinois. The way Internet is, that's the nature of the Internet. And what this court has said is if you use the Internet to materially exploit commercial opportunities in Illinois, if the Internet helps you conduct material commerce, the Internet becomes a contact. They've doubled their commercial office space here using that painting as their emblem and their brand. Thank you, Mr. Hamilton. Thank you. We'll take the case under advisement.